Are all your papers organized there? I certainly hope that I do. Well, I know it's always unsettling to begin an argument when you don't know where things are, so it's good to have time for the lawyers to get their tables in order. I just wanted to check, you've reserved three minutes for rebuttal, correct? That's correct, Your Honor. Okay, you can start whenever you're ready. Thank you. May it please the Court, I'd also like to introduce my partner, Rob Scheinfeld, who's with me at counsel table today, and we both represent Carrot Technology. Scheinfeld, welcome. I'm going to attempt to make three points in the time I have before the Court today. The first is that the District Court's claim construction was incorrect because it improperly imported limitations from the specification and extrinsic evidence into the claims, improperly narrowing them. The second is that even if that construction— You're focusing in particular on security indicia. Security indicia and two other limitations, which we call the creation limitation and the validation limitation. Those are the three terms. The District Court's error was essentially the same to each of these three terms. The second point I'll attempt to make relates to Carrot's motion for judgment as a matter of law that pre-Version 5 of the Net Stamp product infringed, and it's our contention that even if this Court were to accept in its entirety the District Court's claim construction, nevertheless, there is no substantial evidence to support a jury's verdict of non-infringement as to the pre-Version 5 product of those selected claims. And then finally, I'd like to touch on the District Court's dismissal of Carrot's breach of contract claim on summary judgment. We contend that the District Court acted improperly because it resolved several disputed fact questions when it did so. Each of those errors was harmful. Each affected the result or could have affected the result, and so the judgment cannot stand. So I'll turn first, then with the Court's permission, to the claim construction point. And again, as Judge Shaw indicated, I'll start with security indicia. Now, the word security indicia has a plain meaning in the field of secure systems design. It is—and it may actually be obvious just looking at the two words what it means. Indicia is a marking. Security is security. Are you urging, Mr. Williams, the claim construction that I guess was advanced by you at trial, any—the same construction you advanced at trial? Well, we advanced this construction during the markman proceeding. Any distinctive mark that can be used to establish the validity of a document or display? Correct. And in the Court's claim construction order, she actually recognized that that really was the plain meaning of the term and that the parties didn't have a real dispute about that. And that's at A109 of the record where she talks about security indicia. And you're urging that same construction? Correct. We're still urging that that would be the proper construction. I mean, the problem with the construction that the jury got is they were never told what the security indicia actually was. And in connection with—I think I submitted perhaps to the Court one of the trial exhibits that was shown relating to Pre-Version 5. And below it was Exhibit 160A. There's also a copy in the record at A10801. But this is— Mr. Graves, I assume you have no problem with this item? No objection, Your Honor. Okay, fine. So this is actually a Pre-Version 5 net stamps label sheet. And this one is partially filled out. But when the user were to buy the label sheet, all they would get is what's really shown at the bottom of the sheet, these empty labels with a serial number on them. And the serial number would be also at the top of the sheet. It's only when the user put this into their computer and requested postage that these markings get printed on the document. And so you'll see at the top there's this barcode, for instance, a two-dimensional barcode, which contains computer data. So in our view, this was what the security indicia actually was. And we needed a construction from the court so we could show to the jury where this was found in the accused product. They didn't get that. Instead, they got a construction about how you create a security indicia. Using the key. Using a key. And that construction was wrong in two ways. First, no key is required at all to create a security indicia in these claims, in the claims that were asserted at trial. You read the claims, you'll see there's no mention of key. Now, key is mentioned in other claims, and the inventor, when he wanted to incorporate a key into his claims, did so explicitly. The fact that he didn't in the asserted claims means that it was error to require a key be present in order to show infringement. The second error, and this is, again, contained both in the court's construction of security indicia and then the creation limitation and the validation limitation, is that the district court further required that that key, the key that is used to create the security indicia, in her view, also has to be embedded in the pre-printed data itself. So, in other words, under the court's construction, it's not enough that there's a pre-printed data on the form, which is what all the claim requires, but, in fact, this pre-printed form has to be a key. It has to be used for authentication as well, right? That's the court's construction? The court's construction. Well, the claim itself makes clear there is a creation limitation and a validation limitation. And in the claim text itself, it's clear that the pre-printed data on the form has to be used both in the generation of the security indicia and it has to be used in order to validate the security indicia. So we don't dispute that that's required of the pre-printed data. The problem is that doesn't have to be a key. There are other claims directed to using a key for that purpose. All these claims require is that you have pre-printed data on the form and that that pre-printed data be used to generate the security indicia, and then when it comes time to validate that security indicia, for instance, at the post office, that you incorporate in some way the pre-printed data in the process of validation. That, in our view, is the proper construction of all three of those claim terms. But we didn't get that construction from the district court. Instead, we got the requirement. First of all, there was no explanation about what the security indicia was at all, which is there independently. But then second, there was these unnecessary limitations that were injected relating to the fact that a key has to be used and that the key had to be incorporated into the pre-established data. If you look at the claim language, as I pointed out, it's clear when the inventor wanted to use a key, he said so explicitly. And so there are numerous claims where that's true. In fact, it's true of every other claim in the past, every other claim other than the ones that were asserted at trial. So that, in and of itself, should have led the court to realize an error there because the inventor presumably took great care in drafting these claims to exclude the requirement of a key. If we agreed with you on your proposed claim construction, I assume that you would suggest our course of action would then be to vacate what happened below and remand for a new trial or remand for proceedings consistent with the application of the new claim construction. You're not asking us to find infringement as a matter of law on appeal, are you? Well, so there were two versions of the accused product. As to the second... The pre-V-5 and the V-5. Pre-V-5 and V-5. Well, V-5 is essentially design around. What they did is they made some changes to how the security condition is created and they shortened the serial number on the form. As to V-5, absolutely our request is a remand with instructions to have a new trial on the proper claim construction for V-5. For pre-V-5, I mean, I'll accept that. I'll accept a remand, but I think it's clear enough from the facts at trial... Yes, I know. I'm getting very magnanimous today. But I think, in fact, the evidence presented at trial showed that there was no question that pre-V-5 infringed the claims as properly construed. I mean, there's really no dispute about how this product works. There really was no question about how the product works at trial. The only dispute at trial was based on the court's claim construction because the district court said when you create the security condition, you have to use a key. And when you validate the security condition, you have to use a key. And that key has to be embedded in the pre-printed form. The problem is, the question was, okay, what does key mean? And the experts had a dispute about that. And that dispute was put to the jury. And you'll see, and we pointed out in the brief, in closing our hearing... Cryptographic key, that's what you're talking about. Yes, well, right. What Stamp's position was is that key means cryptographic key, that key had to be a cryptographic key and there was not a cryptographic key in the pre-printed data, which we don't dispute. It's the fact that this serial number is not a cryptographic key. It's too small, it's human-readable. There's all sorts of reasons why that wouldn't be a cryptographic key. But if key means what we say, well... Not a really long prime number, for example. Right, right. I mean, I guess the point is that even under the district court's unnecessarily narrow claim construction, right, so all she said was it's a key. She didn't say it had to be cryptographic. So we dispute that construction, but even if it were right, key doesn't necessarily mean cryptographic key. She never said it had to be. So under her construction, there was still judgment. Judgment is a matter of law, of infringement, if pre-B-5 was appropriate, because there is this data, which is on the form itself, the serial number, and that, in our view, was a key under her construction. Yeah, but couldn't... I mean, their expert said it wasn't a key and couldn't the jury have credited that testimony? I mean, why do we have to assume that the jury therefore necessarily imported the cryptographic key limitation in? Well, I mean, it's really a question of claim construction. I mean, this is not an issue for how you apply... No, no, no, you just flipped it again, because at this point it's not a question of claim construction, it's a question of opposing expert testimony before the jury, and the jury, how do we know what the jury believed? I take it there was a general verdict, and that's what you preferred. Well, there was a verdict as to individual... Yes, there was a general verdict... On the question of infringement. On infringement, yes. There was a general verdict, and that's what you wanted. Correct. If I understand the record. That's correct. So we don't know which way the jury viewed this. We don't, and just as an aside, we wouldn't have known even under Stamp's proposed verdict form, because it just listed the claim numbers, not the claim elements. But what I would say to the question is, under the district court's claim construction of key, it did not have to be cryptographic, and the only evidence that was presented by the other side's expert was that this is not a key because key has to be cryptographic. That was his argument. That was the evidence that was presented. Now, that's not evidence. That's claim construction. That's saying, when the judge says key, she means cryptographic, and this isn't a cryptographic key. Well, we don't just, yeah, it's not a cryptographic key, but that's not required. I mean, in our view, it was a mistake to let the jury make that decision. They were essentially being asked to decide the scope of the claim. There was no fact dispute about how the product worked. Are you suggesting the only argument they made vis-à-vis non-infringement was this is not a cryptographic key? For Pre-V-5, as to the selected claims, yes. To the jury, that was all that they made. They made no other arguments with regard to any other element or with regard to the element key apart from the cryptographic argument. They did not make assertions more generally that this is not a key for some reason. Correct. So the selected claims that we're moving for January 11, the only element that was in dispute for Pre-V-5 was key. Now, the slight complication to that is there is this other construction the court gave for key information and key data. Now, those claim terms were actually used in another claim. The claim is actually not even on appeal and it's not one of the selected claims or the asserted claims. However, that construction included language that said key information is information comprising a key, then something that contains a unique validation code required for authentication. So in that construction, there's sort of an implicit definition of what key is, but there were arguments presented as to Pre-V-5 to the jury relating to that construction, which we submit as irrelevant to the selected claims because key information and key data wasn't part of the construction of those claims. I was only asking you about what you were representing. Their arguments to the jury were regarding the Pre-V-5 products, and you said that the only non-infringement argument they made was the absence of a cryptographic key in the Pre-V-5 products. Yes. If that is true, and if we agree a cryptographic key is unnecessary according to the claims, then it might be possible to give you everything that you're asking for. I'm assuming when he stands up in about 10 seconds, he's not going to agree with your characterization, and I'm hoping he's going to point me to a page number that would substantiate his disagreement if there is one, and then maybe on rebuttal you'll tell me whether that's true or not. That would be fine, and I'm happy to do that. From the noises I'm hearing, I'm sure that that is exactly what's going to happen, so I'll respond to that argument in my rebuttal time. I see that I'm into my rebuttal time, but I did want to just touch briefly upon the summary judgment and where we think the Court went wrong there, and I'll mention that very briefly. The first is that the statute of limitations dismissal, so the Court dismissed the contract claim on two bases, one, that statute of limitations had run, and second, that any confidential information that was covered by the NDA had been disclosed by a certain date, and therefore stamps was off the hook for its misuse if it occurred. We think that was wrong for two reasons. Your statute of limitations argument, you have five representatives sitting in the meeting watching the guy take notes. You did nothing until the statute of limitations had already run. I don't see how you have any leg to stand on on that one, so why don't you move to your second one, since you have minus 10 seconds, and move to your second one and say why you think we ought to consider the second and somewhat different argument of they incorporated into products the confidential information we gave them. Right. In other words, there are two breaches that were at issue here. One was the note-taking. The note-taking at the meeting itself was a technical breach. The second breach was the misuse. But I didn't see any good arguments on the note-taking. Okay. I understand the point about note-taking. I'm not trying to get you onto the only one that you have any shot on. Got it. Well, that's what I'm saying. The misuse, there was no way to discover the misuse. Look, we knew they were taking notes. See, that's not your point. Your point, though, I understand. The district court didn't address it, did they? No, she didn't. She did not address it at all. She just assumed that the only argument we had was the note-taking, not the misuse, and the misuse we would not have been able to discover until October of 2001, and we filed suit within the statute of limitations. We had a year left as to that breach. So there's a fact question that precludes summary judgment on that. Right. Got it. Thank you. When you get up on rebuttal, I want you to talk about pages 46, 47, 48 of the red brief in which they set out alternative reasons why the non-infringement verdict should be upheld independent of the problem of claim construction. I'm happy to do that. Would you be happy to do that? Yes. I thought you'd be happy to do that. Thank you. Mr. Williams, thank you. Let's see. You've used up your full rebuttal time, but we'll restore. We'll give Mr. Williams his full three minutes of rebuttal time. Thank you very much. And let's see. Mr. Graves, we'll give you an additional three minutes should you need it also. So I think that should make it even. That'll mean you both have had at least at this juncture 18 minutes. So that's right. Give Mr. Graves 18. Thank you, Your Honor. Thank you. May it please the Court. Mr. Graves, before you get people going here, something I want to bring to your attention. She means before you get started. But while I'm eating up your time. No, there's something that bothered me tremendously. It's sloppy and you all should have figured it out. In your appendix, you give me McDaniel's declaration or testimony, his expert report, which I need, right? Because McDaniel's is what the judge relied upon vis-à-vis security in DISHA informing the claim construction. I don't know if you're aware of this, but it is completely and utterly out of order and most of the relevant pages you cite in your brief are not even there. Okay. So you're going to want to supplement that to our Court within five days. And I'd actually like to do that right now. Your Honor, what you're asking for is Professor McDaniel's testimony at the Markman hearing? No, what I'm asking for is what you cite in your brief, which is pages, let's see, you're citing 753, 754, JA 753, 754. But as you go to those pages in the appendix, let's see, let me read you my page numbers. It goes 729, 752, 753, 956, 959, 750, 751, 733. I see. They are completely and utterly out of order, and some of the ones you cite, which actually has stuff I'd be interested in reading, aren't even there at all. Okay. Well, we'll make sure and supplement that, Your Honor. Thank you. Absolutely. Thank you. If you could do that, Mr. Davis, by the close of business next Friday, that will give you enough time to get home and get it. All right. That's Friday of next week. Yes. Thank you, Your Honor. These things happen. And thank you for pointing that out. No, that should be corrected, though. We will absolutely take care of that. So I'd like to focus my discussion, of course, subject to questions from the panel, really on three key points with a couple of subsidiary points. Number one, focusing on the claim text itself. I think it's very significant that the testimony at the Markman hearing from Professor McDaniel was that the terms created in part by and validatable partially under control of information and data contained in the preestablished data are terms of art. In other words, we're not looking at a blank slate here. To people of skill in the art, as of 1999, when these patent applications were filed, the unrebutted testimony was that they would understand these to be terms of art, and the meaning that created why. But, counsel, we don't look to expert testimony, and we don't force district court judges to necessarily rely upon it. We always start with the claim language in spec, right? Absolutely, Your Honor. And that's exactly what we're doing. In this case, would you suggest that the district court, in construing the words security indicia, would you suggest that he relied upon the expert testimony, she relied upon the expert testimony, or that she based her determination on her reading of the patent claims and the specification? I would say the latter, Your Honor. And the majority of the argument was focused, of course, on the meaning of the claim text itself, the specifications primarily. The prosecution history here was not terribly enlightening, so the majority of the argument was focused on what do the claim terms mean to a person of skill in the art, and what's the disclosure in the specification. Are you suggesting the expert testimony was not used in that construction process? Not at all, Your Honor. I'm suggesting that the court looked primarily, as she was required to do under Phillips, to the intrinsic evidence. Here being the claim text and the specification. She was also guided in part by the explanation from Professor McDaniel as to how a person of skill in the art would understand certain terms of art that were used in the claim text itself. Did both sides present expert testimony? Yes, they did, Your Honor. Yes, they did. They did. Both sides presented expert declarations, and then there was live expert testimony at the Markman hearing put on by both sides with the experts subject to cross. And it was after all of that that she made her claim construction? That's correct. That's correct. Now, again. I guess I'm trying to understand. So is your position that she then relied upon the experts informing her claim construction or that she did it based on the intrinsic evidence? Before you answer that, let me make clear to you that I don't think there's any implication suggested that there's something wrong with expert testimony. We're simply trying to find out what all went into the consideration of her decision. I appreciate that, Your Honor. And I'm doing my best to answer your question. It's my belief based on, of course, I don't know subjectively what she thought, but it's my belief based on the evidence that was submitted in the questioning at the Markman hearing that she looked to both. I believe that Judge Marshall understands that under the Phillips case and its progeny that she is required to look primarily to the intrinsic evidence. And, again, that's what the parties principally argued. I'm going to lay this out for you as crystal clear as I can here. Certainly. Suppose that I disagreed with the district court's claim construction under a de novo review based on my reading of the spec and the claim language. Now suppose that once I actually get McDaniel's expert report, I find his report to be something with which I cannot find clear error if she relied upon it in reaching her construction. Yes. Would this be a good opportunity for us then to suggest that Cyborg should be revisited because if I'm doing it de novo, you lose. If I'm doing it with deference, you win. Well, Your Honor, I would suggest that that may be the case. So this is why I'm trying to explore whether or not the expert testimony was relied upon to ascertain whether that's something that maybe ought to be factored into this case. I believe that the expert testimony was one of the things that was relied upon. So you think she may have made a credibility determination that Mr. McDaniel's, that's Dr. McDaniel's, I'm not sure. No, Professor McDaniel's. Professor McDaniel's, your expert, was more credible than their expert. Possibly, although I don't think she would need to make that credibility determination. And Professor McDaniel's testimony, as well as that of Professor Karamides, Kara's expert, is in the appendix. Professor McDaniel's testimony is in the appendix at pages 8794 to 8837, and then following a short break. And whose testimony is that? Professor McDaniel. And then again at 8842 to 8872. This is the Markman hearing testimony? This is the Markman hearing. That's correct, Your Honor. But most of what I find in her, I don't find her referencing Markman hearing testimony anywhere in her opinion. I find her referencing declarations that were submitted in reports. Isn't that right? That's correct, Your Honor. Although she did, we conducted the Markman hearing on May 31, 2007, and she issued her order, I believe, on September 10, 2007. Right, but I just don't see anything at all in the construction of the terms that issue in this dispute that would suggest that she was influenced by the expert testimony provided at that claim construction hearing. In fact, I don't even see a single citation to it. I do, though, see citations to the expert reports or declarations themselves. Yes, and that is correct. Her construction, though, of the phrases and the terms that are at issue on this appeal is entirely consistent with both the declaration and the testimony that was provided by Professor McDaniel at the Markman hearing itself. Let me get you onto the merits a little bit. So your opposing counsel suggests that the key limitation appears in other claims, but it does not appear in this one. Why should it be incorporated into the security and DSHA language? Certainly, certainly. Well, what they're basically arguing is a claim differentiation argument, and there are a couple of responses to that. Number one, where we have a situation here where the claim terms themselves use terms of art, and that testimony, again, as I said, is unrebutted. And you can review the testimony at the Markman as well as the declaration submitted by the experts, and you'll see on this point that is correct, although Professor Karamidis, CARA's expert, proffers opinions on the ultimate conclusion of claim construction. His basis that he sets forth look to interpretations of the specification which don't actually hold up. He never addresses the terms of art issue that Professor McDaniel brought to the table and proffered to the district court. So the claim text itself uses terms of art not once but twice that lead a person of skill in the art to understand that the information that's contained in the pre-established data that is creating the security indicia and rendering the security indicia validatable is a key. So that's number one. Number two, the specification is entirely consistent with this and in fact teaches at the sentence that we cited the court to. Isn't it possible for the security indicia to be created by something other than a key necessarily? No, it's not. And in fact, it's clear from the testimony of Professor McDaniel, and again, this is unrebutted by Professor Karamidis, that the only thing that can create a security indicia within the context of these patents is a key. The key is required. Well, in that discussion, he was referring to the embodiment. He was discussing one of the embodiments disclosed in the patent. He wasn't discussing the claim language broadly. I disagree, Your Honor. At the Markman hearing, both in the declaration that he submitted, which we hope to get to you in an ungarbled format, and in his testimony at the Markman hearing, he made it quite clear that to one of skill in the art in the field of secure systems design, which both sides agree is the relevant technical field, the only thing that can create a security indicia, as recited in these patents, is a key. You have to have a key. The key is the only thing that can create the security indicia. In a way, one of the... Okay, I'm going to derail you for one more second. My law clerk just pinged me and said that most of the relevant claim construction testimony you keep referring me to on 8857 to 8860 and 8766 to 8807 are not present in the appendix either, just so you know. If you need to supplement, make sure you do it thoroughly. I haven't verified it myself. I'm just getting pinged from the higher-ups. Certainly, it's in our copy of the appendix. Well, you keep referring to it, so it must be important, and so we want to make sure we have it when we make the decision. Then since we've digressed a moment, let me be clear on something. Both your expert and their expert submitted expert declarations for the record. Is that correct? Yes. And both your expert and their expert testified for the record? That's correct, Your Honor. To what extent did these declarations and testimony differ on each side? I understand you differed with each other, but on each side, is there significant differences in the testimony of your expert between the declaration and the testimony, the live testimony? Not in terms of substance. At the testimony, the expert, Professor McDaniel, went into greater detail as to the basis for his opinions than he did in the declaration, because there was a great deal of testimony at the Markman hearing. Were the declarations subject to cross-examination at the time they were taken? The declarations were actually submitted in late 2005, and the Markman hearing was held in May of 2007. So the declarations were subject to cross-examination at the Markman hearing. At the Markman hearing? Yes, Your Honor. The district court judge did allow both sides to use the other side's expert declarations for cross. So if I could return to the claim differentiation issue. The claim says security indicia created in part by information contained in pre-established media data. You don't dispute that the media data is the serial number, right? There's no dispute over that, the serial number on the label. Correct. So that's the media data. So the security indicia has to be created in part by information contained on the label in the security. That's right. So why is the security indicia not created in part by the use of that serial number on your label? Well, okay, so are we looking to the infringement issue then or claim construction? Which direction do you want me to go? Under the judge's claim construction, which requires... I guess we're talking claim construction. Okay. So looking at the specification. All right. So Kara makes an argument that, well, the court's claim construction read out the in part portion of created in part by and the partially portion validatable partially under control of the information in the pre-established data. But that's not actually true because the court's claim construction as well as the opinions proffered by Professor McDaniel, which Kara also focuses on in this regard, allow for there to be multiple keys contained in the pre-established data. And this isn't just some hypothetical embodiment. In fact, it's something that's specifically called out in the specifications of the patents at appendix site A10098. This is the 179 patent at column 6, lines 6 to 7. Yes, but those are just examples of embodiments that could exist. I'm trying to figure out what this claim language means, and to be honest with you, it seems really, really clear to me. Security indicia created in part by the stuff on the label. How does that, I don't see how I get from there to there can't be, there must be a key and therefore you don't infringe. I just don't, I don't follow that line of progression. Well, okay, the created in part by language is entirely, if what you're asking is whether the court read out in part and partially, if that's what you're asking, then the court did not do so with its claim construction because the court's claim construction does permit creation of a security indicia created in part by information, a key, as the court found in the pre-established data, because there can be multiple keys in any particular serial number or barcode. But this claim is not limited to the circumstances of multiple keys? No, of course not. We're not suggesting that it's limited to that. We're suggesting that it encompasses it and therefore Your algorithm uses the serial number from your labels to generate the security indicia. I don't see how that's not just a literal infringement. Because And it's because there's some crazy claim construction idea that I really don't get where this key is somehow imported in here and you want me to rely on Mr. McDaniels because he's an expert in the field and nobody is disputing that he's certainly an expert, but I don't see how he can push that limitation into this claim. Okay. Well, because, again, looking at the actual text of the claims, as Professor McDaniel explained, because you need an expert to explain terms of art. The actual text is what I'm focusing on. Right, but the claim text uses terms of art understandable by those of skill in the art, but not by people such as you and I. And that's why a resort to expert testimony was important here. And Phillips endorses that. Phillips states that you can use expert testimony to establish that a particular term in the patent has a particular meaning in the pertinent field. That's from Phillips. And that's exactly what Professor McDaniel did here. He explained to the judge, look, you know. We do it de novo and they've got somebody that says the opposite of what McDaniel. Well, no, they don't actually. Professor Karamides, no, he never. Professor Karamides says you don't, this claim term does not require a key. That's, Professor Karamides just states the conclusion. Professor Karamides, though, never addressed directly the issue of whether these terms are terms of art, that two, one is skill in the art. That he assumed necessarily in his conclusion about what the term requires. Yes, but, you know, there's case law from the Federal Circuit that states quite clearly that conclusory statements of experts are entitled to no wage. I've got two quick questions. Certainly. Your time is out, and I don't think it's fair to let you go over too long. So two quick questions, though, that I need answered. The first one was, is there anything, if I disagree with you on claim construction, is there any other non-infringement argument that you made, apart from the cryptographic key, that would distinguish the pre-V5 product? Yes, well, first of all, we didn't rely on there simply being a cryptographic key. Apart from this, you know, key argument, is there something that you made? I mean, if I were to disagree with claim construction, what I'm wondering is, do I need to remand or can I decide this is a matter of law? Well, all right. One basis upon which we argued non-infringement below, putting aside the cryptographic key, if the cryptographic key is not required or if the court's claim construction itself, which although it doesn't specifically require a cryptographic key, was certainly limited to that context. There was testimony below that there was no key of any kind, database key, non-cryptographic key, no key of any kind in the NetStamp serial number. There was also testimony… But if I reach the conclusion that the claim construction is wrong and a key is not required, it's enough if the label number is used to create security indicia. If I reach that conclusion, why do I need to remand this case on the pre-V5 product? I understand there's a technical difference in this pre-V5. Well, for pre-V5, there were a number of other kind of non-key, non-security issue or indicia, grounds upon which there was evidence sufficient to find non-infringement. For example, the jury could find non-infringement based on the NetStamp's user's computer not being programmed to create a security indicia under control of data on the NetStamp's label sheet serial number. That's one ground. On the second ground, there's evidence that the Stamps.com servers were not operable to create a security indicia on the label sheets themselves at the user's site or to send a security indicia to the user's printer. And those are two aspects. You provided evidence to the jury on these issues as well. So since we don't know why the jury reached the conclusion it could have, it could have found non-infringement on these bases. Absolutely, Your Honor. And we cite to some of that evidence in our brief. With respect to Claim 1 of the 575 patent, which is one of the indicators. Okay, I got that. Let me ask just one more question. Okay. I didn't see where the district court addressed at all the breach of, the contract breach issue vis-a-vis in particular, not the statute of limitations problem with the note-taking, but the use of the information in the development of products, which I guess Article 5, Article 3, or Paragraph 5 versus Paragraph 3. I only saw the district court focusing on the note-taking in its summary judgment motion. Is there a dispute of fact here over the other potential breach, the second separate breach, which would be the use of the information? Well, there was no evidence submitted in opposition to the summary judgment motion to create a dispute of fact on that. And, in fact, in CARA's opposition at appendix sites A9871 to 72, all they argue is that CARA didn't see Mr. Huebner taking the notes and that there was evidence to that effect. They did not argue the issue of misuse in opposition to the summary judgment motions. And, in fact, even if they had, it wouldn't have made a difference because the failure to satisfy the statute. Okay, counsel, just so we're on the same page, I'm looking at page 2392 of the appendix, which is titled CARA's reply to stamps.com's inked opposition to summary judgment, blah, blah, blah. And on page 2398, let me read from you from the top paragraph. Stamps.com argues KT's breach is barred by the statute of limitations, although it's now apparent that KT's stamps.com breached the NDA by using KT's confidential information as early as July 2000. KT did not become aware of this breach until October 24, 2001 at the earliest. They're talking not about the note-taking, but clearly that paragraph is pertaining to, it seems to me, the use of the confidential information, and it seems to be contained in their summary judgment briefing. That was in their, I believe, their reply brief in support of a summary judgment motion that they filed on the issue of a breach of the nondisclosure agreement, and I believe that that was focusing on the damages issue because we actually made an argument that they couldn't demonstrate any damages, and that was one of the reasons why their summary judgment motion should be denied, and I believe that was their response. But there was no evidence that was proffered in opposition to our motion, and there was no argument that was made at the hearing in opposition to stamps.com's motion. Vis-a-vis the use of confidential information? Vis-a-vis the use, and in addition, that doesn't really matter because under the case law that we cited, which they did not effectively distinguish, primarily the Intermedics case, there is no kind of continuing theory of breach of contract in the nondisclosure agreement context. Once it was breached, it was breached. They knew about it or should have known about it. They didn't proffer any evidence to controvert that. Therefore, summary judgment was proper on the statute of limitations, and, of course, on the independent ground of the failure to – well, on the independent ground of the fact that they disclosed their supposed trade secrets a number of different times back in 2000. Thank you, Mr. Graves. Thank you, Your Honor. Let's see, Mr. Graves went over by six minutes. We've given him 18 minutes, so he had 18 plus 6, which is 24. You had 15, so we'll give you an additional nine for your rebuttal should you need it. I hope you don't need it. I hope I don't need it as well. Well, no, but I just wanted to make sure you both had the same time in case you needed it. Well, let me use a couple of your minutes. I know I started out – or I left you, really, asking you to respond to the non-claim construction arguments that they made, but I want to go back just for a moment to the claim construction issue. Judge Moore has introduced a very interesting question into this discussion. I'm sure you've been following it. Let me ask you this. Do you feel that the trial judge did not give appropriate deference to or weight to your expert's testimony with regard to this claim construction problem, the one we've been discussing? Well, the answer to that question is I felt our – let me start this way. At the actual Markman hearing itself, when the expert testified – Yes, that's what I'm really referring to. Yes, the judge – and unfortunately, I don't think this is in the appendix that you have, although it is in the record, the transcript. The entire transcript is in the record, but not all of it is in the appendix, as you've pointed out. The judge essentially said – and I may be paraphrasing – that she didn't find the expert testimony at Markman particularly helpful. So it's our contention that she probably didn't rely on it very heavily at all. However, the problem is that when you look at her claim construction order and she starts talking about security indicia, she's using really what's coming out of the declaration of Mr. McDaniels and is ignoring the declaration of Dr. Karamidis. So she doesn't really explain. If she was making this decision based on the expert testimony, I would have expected to see her trying to explain why it was that what Dr. Karamidis said about how security indicia are created in the field, how that was inconsistent with what Professor McDaniels said and why she was choosing to rely on one expert over the other, and she doesn't really make that clear. You're saying, Mr. Ruins, based on your assessment of the record and what the district court judge said, it appears that she did not, in terms of claim construction, hang her hat on expert testimony. Well, on one issue, all we have to go on really is her opinion, and she does sort of rely on the history of secure systems design. I think that's mentioned in the opinion at one point, and the only place that could have come from is from the expert testimony. So we know that it was influencing her in that way to the extent she relies on it. And you indicated she relied on his expert but not so much on yours and, in fact, didn't really analyze your expert's testimony. Somewhat along the lines Judge Moore was trying to do this morning. That's correct. I mean, look, it's our contention that this case can be decided without ever having to look at the extrinsic evidence because the claim language itself is clear. You only have to really read the specification. You just read the claims and you can see that key isn't required in the ones that we asserted because when key is required, it's there. All right, now let me move you to the other question. Let's assume for the moment that the claim construction issue is off the table. Is there anything else in this case that might support the jury's verdict of non-infringement? Well, that's sort of a tricky question. If, in fact, this court modifies the claim construction, broadens the claim construction, then certainly as to v. 5, it may be that's the design around. It may be that there is a fact question for the jury to decide about infringement  So there may be a tribal issue for the jury. But just because there was a verdict of non-infringement on this narrower construction doesn't now mean that this court can defer to it if it modifies the claim construction order to make it broader. That's cases like Cardiac Pacemaker and Echolab make that clear. So, in other words, once you've identified an error of claim construction as to v. 5, then the only proper thing to do is to send that case under the new claim construction back for a retrial because it can't be said that the new claim construction wouldn't have changed the result. But I think we're talking about the pre v. 5. Okay. You need to focus on that because he raised at least two non-infringement arguments for which he claims there was evidence submitted to the jury and therefore they could have faced a non-infringement finding on those. And so we need to figure out what to do if we agree with you on the construction. Sure. Okay. So you mentioned two. Actually, I really think I only heard one. One had to do with the user computer not being programmed for something and the other had to do with, I don't know. We get the transcript of the whole thing. No, no, no. That's fine. So I think those actually are two related points. And really what I think the argument is is that there's no independent location. So the claim talks about an independent location that's doing these things, that's creating these security indicia. And I think his point is that there is no independent location because what they actually do is they split up two functions in their actual product. So they have a server on their headquarters that calculates the cryptogram or calculates the data, the digital signature. Then they send that back to the client PC, and that's the thing that actually spits it out onto the printer. So they split up that functionality into two pieces, and so they're saying that there's no single one of those pieces that does all the functions. But my point is that that doesn't matter because all the claim requires is that those functions be performed in an independent location from the printer. So the fact that they're performed by the stamps that sort of arbitrarily divided those functions up into two different computers that are not identical is irrelevant to the claim.  They're performed at an independent location from the printer, and there's no dispute that they are. So in other words, there really is no fact question about how pre-refinable it is. Well, but the claim says said independent location operable through said printer security indicia. Wouldn't that imply a single location, which is therefore performing those things? And you're suggesting to me that there are two different things that perform it. You're trying to tell me that the only thing that matters is it's not being done by the printer, it's being done somewhere else, but we've got to be true to very specific claim language. It's said independent location singular. So wouldn't that imply that a single alternative location has to do it? And you're telling me right now there's two. I realize this is not the issue you all bring, but this is kind of why I think the best you might be likely to get is a vacate and remand because I think that there may be issues here. What you're telling me doesn't make me all warm and fuzzy and happy thinking that, oh, yes, it's clear there's no other issues that might need to be resolved. Yes. So this one, you're right, it's not brief, or if it is, it's not brief very well. And it wasn't actually – I mean, there was no argument to the jury about whether there was an independent location that did this. There was evidence in the record, yes, but the argument to the jury was very stark. It was if there's no cryptographic key, there's no infringement, and you should make a finding that cryptographic keys are important. So, yeah, my position is that as a matter of claim construction, this court can make that decision on the record. Does independent location mean one, or does it mean that it can be anything that's apart from the printer? I mean, in our view, the latter is correct, and the reason for that, by the way, is that the applicant didn't want to claim what was prior art. It's these postage meters, right, that it's combined. It's a single device that prints postage. I'm sure the court has one, and everyone has probably seen one. So this is different because this, the invention, is allowing a user to print at their home PC. So that was really what was trying to be distinguished here, is focusing on the PC. And, you know, the other point is what they're really arguing about the sending limitation is that, so another theory of infringement, which I didn't articulate very well, is that everything is actually performed by the server itself, the stamps.com server, except that the stamps.com server is obviously not connected to the printer. So it actually does, in our view, perform the step of sending the security indicia. It just doesn't do so directly. But that's okay because the claim doesn't require that it be sent directly. So I did, so I think I addressed the question that you had for me last time, which is that if there was a broadening claim construction, certainly for V-5, there has to be a new trial because you can't say that the judgment would be, the verdict would have been the same. I did have. Why don't you spend your last minute on your breach of contract issue and respond to what opposing counsel mentioned vis-a-vis your second breach and the fact that you simply did not raise that in response to the summary judgment brief. So I found a page on my own, but it turns out it's a different summary judgment motion and it wasn't this summary judgment motion. Well, so respectfully, I totally disagree with that. There were a couple summary judgment motions brought on the contract issue. So show me where you raised this issue somewhere. Sure. At A1411 of the record, first of all, and that may be the same site. Let me just see if that was the site that the court was referring to earlier. Well, it's not the site I was on earlier. Okay. So at the bottom of that page, you'll see the last couple lines. A1411? A1411. So this is in CARA's motion. We say, stamps breaches of the NDA caused damage. The undisputed facts establish that stamps, and then one, made use of confidential information that was disclosed to it, and two, stamps illicitly memorialized this information. So that's the two breaches we're talking about. Okay. Also, if you look then at the actual hearing itself, so these various motions were decided at a single hearing, and this is at 2487 in the record. We attempted to make very clear to the court that there was a difference between our motion for breach, which was based just on the note-taking, and this other issue, which was misuse of confidential information. That's clearly distinguished to the judge at the summary judgment hearing at 2487. So I would point to that. And finally, as to just this intermedics case issue, we're not arguing continuing breach. I know. You're arguing two independent breaches. All those cases deal with the same breach. I understand your argument. This is two independent breaches. Okay. Thank you. Thank you very much, Your Honor, and I appreciate the— Graves, thank you. The case is submitted. Thank you, Your Honor.